UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA MARIE HAGUE,

                 Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____/

Case No. 20-13084

Judith E. Levy
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

    Plaintiff Christina Marie Hague ("Hague") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15) and the administrative record (ECF No. 10).

    For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's

motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff alleges her disability began on May 27, 2011, at the age of 29. (ECF No. 10, PageID.51).  She filed her applications for DIB and SSI on December 10, 2018.  (*Id.*).  In her disability report, she listed several ailments which negatively impacted her ability to work.  (*Id.* at PageID.213).  The ailments included: (1) unspecified bipolar; (2) major depressive recurrent; (3) generalized anxiety disorder; (4) dorsalgia; (5) intercranial hypertension; (6) insomnia; (7) chronic pain; (8) migraine without aura; (9) obesity; (10) and OCD.  (*Id.*).  Her DIB application was first denied in error on January 22, 2019 due to lack of insured status.  Thus, Plaintiff's DIB application was escalated to the hearing level and all allegations were evaluated back to the date of a previous disability determination.  Her SSI application was denied on May 20, 2019.  (*Id.* at PageID.51).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (*Id.*).  On January 16, 2020, ALJ Allison Dietz held a hearing, at which Plaintiff and a vocational expert ("VE"), John N. Stokes testified.  (*Id.*).  On

February 18, 2020, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id*. at PageID.48).

Plaintiff later submitted a request for review of the hearing decision.  (*Id*. at PageID.37).  On October 15, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id*.).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 19, 2020.

### B.      Plaintiff's Medical History[1]

Hague alleges her disability began on May 27, 2011.  (*Id.* at PageID.213). Hague's primary care physician Rohit Verma, M.D., noted her unspecified bipolar disorder and unspecified anxiety as early as May 22, 2013.  (*Id.* at PageID.672). He also noted she was in no acute distress and presented a normal and appropriate affect.  (*Id.*).  On September 20, 2013, she reported increasing depression and social anxiety, though her depression had been doing well.  Dr. Verma continued to note her normal affect during exam.  (*Id.* at PageID.666).  Over a period of time her mood improved, and she displayed generally normal affect.  (*Id*. at PageID.660-64).

---

[1] Since Plaintiff's argument for review relates to her mental impairments, the undersigned will only discuss her mental health history.

On April 13, 2015, Hague was seen at the Henry Ford Brownstown Hospital after being sexually assaulted.  Doctors noted her mild distress and anxiety.  (*Id.* at PageID.297-99).  On June 15, 2015, she reported to Dr. Verma that Klonopin had not been effective in relieving her anxiety and still showed a normal affect.  (*Id.* at PageID.635).  While she still had rough periods, by February 8, 2016 she reported improved anxiety and depression Dr. Verma again noted her normal affect.  (*Id.* at PageID.623).

On January 17, 2018, Plaintiff went to Community Care Services ("CCS") for counseling and psychiatric services.  After exam, she was diagnosed with major depressive disorder, bipolar I disorder, generalized anxiety disorder, and mixed obsessional thoughts.  Her mental status examination was unremarkable, though she showed a sad emotional state.  (*Id.* at PageID.483-84).  She had a Global Assessment of Functioning ("GAF") score of 50.  Staff recommended outpatient therapy and medication management.  (*Id.* at PageID.484-85).  During her follow up visit on August 10, 2018, she had an unremarkable mental status examination, and her GAF was static.  She reported depression, anxiety, trouble sleeping, lack of appetite and interest in things, though she denied hallucinations or suicidal thoughts.  (*Id.* at PageID.449-51).  She showed signs and symptoms of depression during a follow up on August 22, 2018.  (*Id.* at PageID.428).  On September 4, 2018, she told Dr. Verma she felt "extremely depressed" after being taken off

4

medications but reported feeling much better once she restarted them.  She had a grossly normal cognitive exam.  (*Id.* at PageID.530).  By September 19, 2018, she showed some progress with her treatment at CCS, though she still presented sadness and anxiety.  (*Id.* at PageID.426).

Her progress at CCS waned by January 24, 2019, as she reported she was depressed, isolated, and not taking care of her personal needs.  (*Id.* at PageID.408).  By March 20, 2019, she reported guilt, energy and concentration deficits, psychomotor retardation, distractibility, easy frustration, decreased sleep, excessive worry, irritability, and fatigue.  (*Id.* at PageID.396).  She had an unremarkable mental status exam.  (*Id.* at PageID.403-05).  She showed signs and symptoms of depression and her GAF score remained the same.  (*Id.* at PageID.406).  During her follow up with CCS on April 17, 2019, she showed suicidal intent and paranoia, but otherwise had a normal mental status exam.  She reported Wellbutrin increased her anxiety and reported improvement in brain fog and mental clarity.  (*Id.* at PageID.393-94).

 On April 25, 2019, Dr. Hugh Bray, Ph.D., completed a consultative mental status examination of Plaintiff.  (*Id.* at PageID.486-91).  He found she had adequate contact with reality.  Her self-esteem was diminished to poor, but she showed no unusual or bizarre behaviors.  Her insight and judgment were adequate, and she was cooperative and responsive.  Her thoughts were goal directed and

5

organized.  Her communication was appropriate and understandable.  She denied

hallucinations, homicidal thoughts, or suicidal plans, though she reported a history

of self-harm.  She had a depressed mood.  She struggled with concentration, and

attention during exam.  She can manage funds.  She is diagnosed with bipolar

disorder and social anxiety.  Her prognosis is guarded to poor.  Her ability to relate

to others was markedly impaired, as she could not form a rapport with the

examiner.  Her ability to carry out tasks appeared mildly impaired, as she could

perform simple repetitive tasks and could handle more complex ones.  She could

be moderately impaired in performing multi-step tasks.  Her ability to maintain

attention was moderately impaired.  Her ability to withstand pressure from part-

time and full-time work was markedly impaired.  (*Id*.).

On May 10, 2019, Jerry Csokasy, Ph.D., a state agency reviewing

psychologist, reviewed Plaintiff's claim.  Upon his review of the record, he found

Plaintiff had mild limitations in understanding, remembering, and applying

information, interacting with others, and adapting or managing herself.  She had

moderate limitations in concentrating.  He found Dr. Bray's findings of marked

limitations in working or relating to others were not supported by the overall

evidence.  He found that Plaintiff could perform simple and routine tasks on a

sustained basis in a low stress environment.  (*Id.* at PageID.119-120).

6

Plaintiff had another follow up appointment at CCS on June 26, 2019.  She showed suicidal thoughts and paranoia, though the rest of her mental status examination was normal.  (*Id.* at PageID.695-702).  On June 27, 2019, Deangella Simpson, NP, and Kevin Rose, LMSW, of CCS authored a letter indicating her diagnoses as Major Depression Recurrent, Generalized Anxiety Disorder and Mixed Obsessional thoughts and acts.  These disorders cause depressed moods, crying, and struggles with sleep, appetite, concentration, and memory.  Her worries and obsessional thoughts could lead to things like frequent checking of the stove. The letter further indicated her symptoms interfere with her ability to work.  (*Id.* at PageID.550).

On July 10, 2019, Dr. Verma authored a letter indicating she is physically and mentally unable to work.  Her conditions of dizziness, nausea, pain, and memory loss impact her ability to work.  (*Id.* at PageID.551).  On August 30, 2019, Dr. Verma completed a Physical Residual Functional Capacity Questionnaire, indicating Plaintiff suffered from depression and anxiety.  Her conditions caused among other things, memory loss, fatigue, mood swings, and obsessive thoughts. These symptoms could cause constant interference with her attention that made her incapable of even low stress jobs.  She could be absent from work more than four days per month because of her conditions.  (*Id.* at PageID.553-56).

7

She continued to see Dr. Verma for checkups throughout 2019.  Dr. Verma

continuously noted her normal cognitive examinations.  She showed no acute

distress, was alert, oriented, made good eye contact, and displayed logical and goal

directed thoughts.  (*Id*. at PageID.503-516; 728-41).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since May 27, 2011, the alleged onset date.  (ECF No.

10, PageID.54).  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: obesity, disorders of the spine–lumbar, intracranial hypertension

(with headaches), depression/bipolar, anxiety, and mixed obsessional thoughts.

(*Id*.).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id*.).  **Between Steps 3 and 4** of the sequential process,

the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined

that Plaintiff had the RFC:

> to perform sedentary work . . . except with the following
> limitations: occasional climbing of ramps and stairs; no
> climbing of ladders, ropes, or scaffolds; occasional
> balancing (uneven terrain/slippery surfaces -- due to

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant
can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a),
416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

dizziness); occasional stooping, kneeling, crouching and crawling; no exposure to extreme cold/heat, extreme humidity/wetness, vibration/vibrating tools, unprotected heights or moving mechanical parts; no operation of a motor vehicle within the scope of employment (due to visual effects and headaches caused by intracranial HTN); work in environments with a noise level no greater than moderate as defined by the DOT-SCO; no work in environments with lighting levels greater than those found in an indoor work environment, such as an office or retail space; frequent handling/fingering bilaterally. The individual would further be limited to "low stress" work, which is defined as: simple, routine and repetitive tasks in an environment free from fast-paced production work (such as an assembly wherein all tasks must be completed within strict timeframes) with only simple work-related decision-making and few, if any, workplace changes; occasional contact with supervisors and incidental contact with coworkers and the general public. ("Incidental" contact with coworkers: may encounter or pass in common areas, such as time clocks, breakrooms, restrooms, lunchrooms; may even work at the same table with other workers; no requirement of interaction with coworkers in order to successfully complete assigned tasks. "Incidental" contact with the general public: may pass or encounter in common areas, such as hallways, restrooms or lobbies, but there would be no requirement of interaction with the general public in order to successfully complete assigned tasks.)

(*Id.* at PageID.57). At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work. (*Id.* at PageID.67). At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as document preparer, surveillance system monitor, and

dowell inspector.  (*Id.* at PageID.68).  The ALJ therefore concluded that Plaintiff

had not been under a disability, as defined in the Social Security Act, since May

27, 2011, through the date of the decision.  (*Id*).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[3]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that, notwithstanding the claimant's

impairment, he retains the residual functional capacity to perform specific jobs

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

existing in the national economy.  *Richardson v. Sec'y of Health & Hum. Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

## E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

11

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

Plaintiff makes one argument for remand. She contends the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly articulate why she found two significant medical opinions unpersuasive. (ECF No. 12, PageID.746).

### 1. Evaluation of Dr. Verma's Opinion

12

Plaintiff argues the ALJ improperly discounted Dr. Verma's opinion because she ignored Dr. Verma's opinion on Plaintiff's mental impairments.  (*Id.* at PageID.762).  The Commissioner responds the ALJ properly articulated her consideration of Dr. Verma's opinion's supportability and consistency with medical evidence from other sources.  (ECF No. 14, PageID.783).  In reply, Plaintiff contends the ALJ's opinion was unsupported by substantial evidence because she selectively read Dr. Verma's opinion.  (ECF No. 15, PageID.796-97).

In review, the ALJ will assess both treating and non-treating medical evaluations based on how well they are supported by the rest of the record.  20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").  The factors an ALJ must consider in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion.  §§ 404.1520c(c), 416.920c(c).  ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but

"are not required to . . . explain" the consideration given to the remaining factors.  §§ 404.1520c(a-b); 416.920c(a-b).

Under the regulations, "supportability" means the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).  For "consistency," the regulations explain that the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

Though Plaintiff argues the ALJ's review of Dr. Verma's opinions on her mental impairments was inadequate, the regulations do not require a thorough review of all a medical source's opinions.  According to prevailing jurisprudence, an ALJ need not explain her evaluation of each portion of a medical source's opinion.  §§ 404.1520c(b)(1), 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").  So long as the ALJ sufficiently explains the supportability and consistency of a medical opinion, she has sufficiently evaluated the medical opinion under the regulations.

14

The ALJ sufficiently explains how she found Dr. Verma's opinion was unsupported, because she explains how Dr. Verma's opinion conflicts with objective medical evidence on record.  The more relevant the supporting objective medical evidence and explanations are, the more persuasive a medical opinion can be.  20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).  When an ALJ finds an opinion "inconsistent with the objective evidence throughout the record, she is simply weighing the objective evidence in terms of supportability as promulgated by the regulations."  *Bundy v. Comm'r of Soc. Sec*., No. 20-10254, 2021 WL 1822311, at *12 (E.D. Mich. Jan. 29, 2021), *report and recommendation adopted*, No. 20-10254, 2021 WL 1220867 (E.D. Mich. Mar. 31, 2021).  For example, an ALJ may note that the medical provider contradicts his own opinion with treatment notes elsewhere in the record.  *Id.*  (finding that the ALJ permissibly weighed other objective evidence on record in terms of supportability when the ALJ noted the doctor's "own reports in the record seem to contradict his opinion…").

In explaining her analysis of Dr. Verma's opinion, she cites her "grossly normal" mental status examinations.  (ECF No. 10, PageID.65).  Mental status examinations and treatment notes by Dr. Verma charted Plaintiff's normal cognitive examinations before and after his opinion.  She consistently showed no acute distress, and was alert, oriented, made good eye contact, and displayed logical and goal directed thoughts.  (*Id*. at PageID.503-516; 728-41).  The ALJ

finding moderate psychological limitation is supported by substantial evidence drawn from the mental status exams. *See Tucker v Comm'r of Soc. Sec.*, 775 F. App'x 220, 224 (6th Cir. 2019) (ALJ did not err by relying in part on "largely normal" mental status examinations with "minimal or no impairment of memory, concentration, attention or judgment."). Like the ALJ in *Bundy*, the ALJ here cited a doctor's own reports to weigh the supportability of medical opinion evidence. *Bundy*, 2021 WL 1822311, at 12*. This is the type of objective medical evidence an ALJ can weigh against opinion evidence to weigh supportability.

The ALJ also sufficiently describes why Dr. Verma's opinion conflicts with the record because she explains how Dr. Verma's findings contrast with Plaintiff's treatment history, mental status examinations, and activities of daily living. (ECF No. 10, PageID.64). The more consistent an opinion is with the rest of the record, the more persuasive an ALJ may find it. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). An ALJ can draw from the record as a whole in crafting the RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. 2013) (rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record"). The ALJ discussed Plaintiff's treatment history for seven pages before assessing Dr. Verma's opinion. (ECF No. 10, PageID.57-64). In rejecting Dr. Verma's opinion, she cites her testimony about how quickly her anxiety attacks resolve after

16

medication and her treatment history.  (*Id.* at PageID.65).  She also discusses how Plaintiff's testimony about her lifestyle does not support Dr. Verma's finding. Plaintiff testified she spends time watching television, with struggles to concentrate, and does small chores.  She could attend birthday events for family and church.  (*Id.* at PageID.94-95).  The ALJ explained how the medical and non-medical evidence on record varies from Dr. Verma's finding.

The ALJ's rejection of Dr. Verma's opinion is sufficiently articulated and supported by substantial evidence.  Her contention that Dr. Verma's opinion differs from objective medical evidence and thus not supported is adequately explained and supported by substantial evidence.  Her finding that Dr. Verma's opinion is inconsistent sufficiently describes the opinion's contrast with the record and is supported by substantial evidence.  Reviewing the record again to arrive at a contrary conclusion would be reweighing the evidence, and therefore improper. *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) ([w]e do not reweigh the evidence or substitute our judgment for that of the ALJ.") (quoting *Tennessee Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)).  Remand is not warranted on this issue.

2.  Evaluation of Dr. Bray's Opinion

Plaintiff argues the ALJ found Dr. Bray's opinion unpersuasive for reasons not supported by the record, and without adequately explaining its supportability

and consistency.  The ALJ improperly focused on Dr. Bray's status as a one-time examiner and incorrectly attributed his opinion to reliance on Hague's subjective complaints.  (ECF No. 12, PageID.767-70).  The Commissioner contends the ALJ sufficiently explained the supportability and consistency of Dr. Bray's opinion. She also considered Dr. Bray's treating status, as permitted by the regulations.  A reasonable mind could agree with her interpretation of Dr. Bray's opinion.  (ECF No. 14, PageID.788-93).  Plaintiff responds that there is no clear basis for the ALJ's finding that Dr. Bray relied too heavily on Plaintiff's subjective complaints. (ECF No. 15, PageID.800-01).

The ALJ explains how she found Dr. Bray's opinion unsupported by finding Dr. Bray relied too heavily on Plaintiff's subjective report of symptoms and limitations.  An ALJ may find an opinion more persuasive the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion."  20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).  The ALJ found Dr. Bray's opinion unpersuasive in part because he "relied quite heavily on the subjective report of symptoms and limitations provided" and appeared to "uncritically accept as true most, if not all, of what claimant reported." (ECF No. 10, PageID.63).  The ALJ found that Dr. Bray relied on more subjective than objective medical evidence, thus his opinion lacked sufficient supporting objective medical evidence for supportability.  §§

18

404.1520c(c)(1); 416.920c(c)(1).  Dr. Bray relied on his own observations and his

interview with Plaintiff that day to draw his conclusions.  (ECF No. 10,

PageID.490-91).  An ALJ disregarding a medical opinion due to the provider's

reliance on a claimant's subjective complaints is supported by substantial evidence.

*Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (finding ALJ

gave sufficient reasons for discounting treating physician opinion when he relied

on subjective complaints, without sufficient support from objective findings).  A

reasonable mind could agree with the ALJ that Dr. Bray did not rely on sufficient

support from objective findings, so his opinion was unsupported.

The ALJ also adequately clarifies how Dr. Bray's opinion differed from the

rest of the record.  The more consistent an ALJ finds a source's opinion with the

rest of the record, the more persuasive an opinion can be.  §§ 404.1520c(c)(2);

416.920c(c)(2).  The ALJ found Plaintiff's mental health limitations were "not as

extreme as noted" in Dr. Bray's opinion and cited her mental health treatment

records for comparison.  (ECF No. 10, PageID.63).  The mental health records

chart Plaintiff's treatment at CCS and with Dr. Verma from December 2017 until

August 2019.  These records reflect consistently unremarkable mental status

examinations with some signs of depression, sadness, and suicidal thoughts.  (*see

id.* at PageID.403-05;449-51;483;503-516; 530;688-725).  She also consistently

scored a GAF score of 50.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th

Cir. 2007) (finding a GAF score in the high 40s to mid-50s not preclusive from having the mental capacity to hold at least some jobs in the national economy).  A reasonable mind could agree with the ALJ's conclusion that Dr. Bray's finding of mental limitations were more extreme than the rest of the record.

The ALJ's evaluation of Dr. Bray's opinion was adequately explained and supported by substantial evidence.  Her finding that the ALJ relied too heavily on Plaintiff's subjective complaints to draw his conclusion weighs the opinion's supportability and is supported by evidence in his opinion.  Her comparison between Dr. Bray's opinion and the mental health treatment records demonstrates the opinion's inconsistency and is supported by mental health treatment records. Considering Dr. Bray's relationship to Plaintiff in evaluating his opinion is allowed by the regulations, though the ALJ need not offer this evaluation for each opinion. §§ 404.1520c(c), 416.920c(c).  Even if there is substantial evidence in the record to support Dr. Bray's opinion, since substantial evidence supports the ALJ's finding, the undersigned cannot disturb it.  *Blakley*, 581 F.3d at 406.  A remand on this basis is improper.

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For these reasons, it is

20

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

21

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 1, 2022                s/Curtis Ivy, Jr.
                                       Curtis Ivy, Jr.
                                       United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on February 1, 2022.

                                       s/Kristen MacKay
                                       Case Manager